# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 20-00019-CJC-2 |
| Plaintiff, | AMENDED ORDER OF DETENTION |
| v. | |
| NOEL GRANADOS, *et al.*, | |
| Defendants. | |

## I.  INTRODUCTION

Defendant Noel Granados is charged with conspiracy to distribute and with possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1).  (Dkt. 1 [hereinafter "Indictment"].)  On January 29, 2020, Mr. Granados made his initial appearance before United States Magistrate Judge Patrick J. Walsh, who ordered him to be detained pending trial.  (Dkt. 144 [Order of Detention].)  Mr. Granados

-1-

now moves for review of Judge Walsh's detention order and for release on bail. (Dkt. 410 [Application for Review of Order Setting Conditions of Release].) For the following reasons, Mr. Granados's application is **DENIED**.[1]

## II. BACKGROUND

The Indictment alleges that Mr. Granados and twenty-three others participated in a sophisticated conspiracy that distributed millions of dollars' worth of narcotics throughout the United States between 2016 and 2018. (Indictment ¶ 1.) The conspiracy was launched after several co-conspirators connected with drug suppliers in Mexico and Colombia and arranged for them to ship narcotics to Southern California. (*Id.* ¶ 2.) Once the drugs arrived, other co-conspirators (including Mr. Granados) arranged for them to be shipped nationwide to locations including Cleveland, Ohio; Birmingham, Michigan; Niagara Falls, New York; Buffalo, New York; New York City, New York; Columbia, South Carolina; and Chattanooga, Tennessee for further distribution. The recipients of these drug shipments then mailed packages of cash back to Southern California.

Mr. Granados maintained a leadership role throughout this alleged conspiracy. The Indictment alleges that he committed over 70 overt acts in furtherance of it. According to the Indictment, Mr. Granados's primary role was to arrange drug shipments by giving instructions to various co-conspirators over the phone in coded language. For example, around September 1, 2017 he coordinated with a co-conspirator to import drugs from Mexico and Colombia to the United States in a series of telephone calls. (*Id.* ¶¶ 35–42.) He then arranged for a unit of drugs to be shipped to New York. (*Id.* ¶¶ 44–51.) About a month later, Mr. Granados arranged for another co-conspirator to pick up over

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Crim. P. 57(b). Accordingly, the hearing set for June 17, 2020 at 9:00 a.m. is hereby vacated and off calendar.

$170,000 in drug proceeds in Ohio and ship the money back to Southern California.  (*Id.* ¶¶ 56–58, 72.)  In the process, co-conspirators often looked to Mr. Granados for direction, and he responded with advice and instruction.  (*See, e.g.*, *id.* ¶¶ 44 [providing direction to co-conspirator regarding a unit of drugs that had not yet been shipped], 46 [instructing a co-conspirator to purchase a burner phone], 48 [instructing a co-conspirator to mail a unit of drugs to another co-conspirator in New York], 99 [instructing a co-conspirator on how to mail drug proceeds using the United States Postal Service]; 113 [ordering a co-conspirator to get a new phone because he believed that law enforcement was investigating them].)

This is not the first time that Mr. Granados has been before this Court.  In 2011, he was convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846.  *See United States v. Granados*, No. 10-cr-00041-CJC, Dkt. 34 [Plea Agreement].  In that case, Mr. Granados arranged for fifty kilograms of cocaine to be shipped from Southern California to Ohio by plane.  *Id.*  This Court sentenced him to 87 months in prison to be followed by five years of supervised released.  *Id.* at Dkt. 53 [Judgment and Commitment Order].  Mr. Granados's term of supervised release began on June 14, 2016.  During this time, he frequently met with a probation officer who monitored his compliance with the conditions of his release.  One such condition obligated him to obey all federal, state, and local laws.  *Id.*  On October 7, 2019, the Court granted Mr. Granados's motion for early termination of supervised release after he represented that he had "been in full compliance of all the conditions set by the court" for over three years.  *Id.* at Dkt. 88 [Motion for Early Termination of Supervised Release].  But according to the Indictment, Mr. Granados' representation was far from true.  Indeed, all of the alleged conduct leading to the instant charges occurred while Mr. Granados was on supervised release.

At Mr. Granados's initial appearance in this case, Magistrate Judge Walsh ordered that he be detained pending trial after finding that he posed a serious flight risk and a

danger to the community. (Dkt. 144.) Mr. Granados filed two applications for review and reconsideration of that decision, and Judge Walsh conducted hearings on March 25, 2020 and May 7, 2020. At those hearings, Mr. Granados presented new evidence that several people were willing to sign surety bonds on his behalf. Magistrate Judge Walsh rejected the proposals and ordered that Mr. Granados be detained pending trial. (Dkt. 411.) Mr. Granados now seeks review of those decisions before this Court. The Government opposes his application. (Dkt. 433 [hereinafter "Opp."].)

## III. ANALYSIS

The Bail Reform Act permits pretrial detention only upon certain findings. 18 U.S.C. §§ 3142, *et seq*. "The whole spirit of the Bail Reform Act . . . is that a defendant facing trial should be released, rather than detained, unless there are strong reasons for not releasing him." *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972). The burden rests with the Government, which must prove by a preponderance of evidence that the defendant poses a serious risk of flight or by clear and convincing evidence that the defendant poses a danger to the community. *See* 18 U.S.C. §§ 3142(e), (f); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The Government must also show that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In determining whether to release or detain a defendant, courts consider (i) the nature and circumstances of the offenses charged, (ii) the weight of the evidence against the defendant, (iii) the history and characteristics of the defendant, and (iv) the nature and seriousness of the danger to the community. 18 U.S.C. § 3142(g).

The Bail Reform Act creates a rebuttable presumption that a defendant is ineligible for bail if there is probable cause to believe he committed certain serious crimes. *See* 18 U.S.C. § 3142(e)(3). The offenses charged in the Indictment here trigger that

presumption. *See id*. "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (internal quotation omitted). "Although the presumption shifts a burden of production to the defendant, the burden of persuasion remains with the government." *Id.*

After considering the section 3142(g) factors, the evidence presented by the parties, and the arguments of their counsel, the Court concludes that the Government has met its burden in establishing that Mr. Granados presents a danger to the community and a flight risk. Consequently, he must be detained pending trial.

### A.   Danger to the Community

The Government has shown by clear and convincing evidence that Mr. Granados poses a danger to the community. Mr. Granados is charged with being the leader of a sophisticated drug-trafficking conspiracy. According to the Indictment, he and his co-conspirators successfully distributed millions of dollars' worth of heroin, cocaine, and methamphetamine throughout the United States over a two-year period. Mr. Granados's role in this conspiracy was neither isolated nor peripheral. He maintained a leadership role, often giving orders to lower-level participants and directing the shipment and delivery of large quantities of drugs. (*See, e.g.*, Indictment ¶¶ 44, 46, 48, 99, 113.)

Mr. Granados also has a significant criminal history. This is the second time he has been indicted on federal drug charges. In 2011, he was convicted of conspiring to distribute fifty kilograms of cocaine from Southern California to Ohio in violation of 21 U.S.C. § 846. *United States v. Granados*, No. 10-cr-00041-CJC. This Court sentenced him to 87 months in prison, but according to the Indictment, this time in custody did not

deter Mr. Granados. Almost as soon has he was released—and while he was on supervised release—he assumed a leadership role in yet another drug-trafficking conspiracy. He also has four misdemeanor convictions—three for driving under the influence and one for driving with a suspended license.

Mr. Granados makes much of the fact that many of his co-defendants have been released on bond pending trial. This is not persuasive. None of these co-defendants were on a term of supervised release stemming from another federal drug conviction during their alleged participation in the instant conspiracy. Mr. Granados's criminal history distinguishes him from his co-conspirators and gives the Court great concern that, if released, he would pose a danger to the community by continuing to engage in drug trafficking. His detention is therefore necessary to protect the community.

### B.   Flight Risk

The Court also finds by a preponderance of the evidence that Mr. Granados is a serious flight risk and that no condition or combination of conditions will reasonably assure his appearance as required. Two factors compel this finding.

First, Mr. Granados has a strong incentive to flee given the potential punishment he would face upon conviction and the weight of evidence against him. The statutory maximum for the instant offense is life imprisonment and Mr. Granados faces a fifteen year mandatory minimum sentence given his prior felony drug conviction. *See* 21 U.S.C. §§ 841(b)(1)(A). Avoiding a lengthy prison sentence provides a compelling reason for Mr. Granados to flee and not appear as required. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (citing "grave[] penalties" as a factor which gives the "defendants [] an even greater incentive to consider flight"). The Government has also marshalled compelling evidence of Mr. Granados's guilt on the charges. According to

the Indictment, the Government intercepted a series of phone conversations in which he coordinated drug sales and provided extensive instruction to lower-level participants in the conspiracy using coded language.

Second, Mr. Granados has a history of deception and disobeying Court orders. Again, all of the alleged conduct charged in the Indictment occurred while he was on a term of supervised release imposed by this Court. One of the terms of his supervised release was that he not commit any state or local crimes. This Court actually terminated Mr. Granados's term of supervised release early after he represented that he had been in full compliance with its terms for over three years. But according to the Indictment, this representation was utterly false. Almost as soon as he was released from custody on his first federal drug conviction, Mr. Granados began orchestrating another conspiracy to distribute large quantities of drugs across the United States. He played an integral role in this conspiracy throughout his period of supervised release and managed to conceal his involvement from his probation officer. This demonstrated disregard for the law and Court orders gives the Court great doubt that Mr. Granados would appear at court proceedings if it releases him on bond.

### C.     Constitutional Issues

Mr. Granados contends that his pretrial detention violates his Sixth Amendment right to counsel and his Fifth Amendment right to substantive due process. The Court disagrees.

First, Mr. Granados argues that the COVID-19 related restrictions currently in place at the Metropolitan Detention Center, Los Angeles (MDCLA) render him unable to meaningfully assist his counsel with his defense, in violation of the Sixth Amendment. On March 16, 2020, MDCLA suspended "drop-in" legal visits in an effort to reduce the

spread of COVID-19 at the facility. (Opp. at Ex. F.) Now, attorneys must request a time to meet with their client in advance and, if the request is accepted, can only come to facility at specified times and must first undergo a COVID-19 screening. (Dkt. 416 at Ex. B.) To make up for this interruption, the BOP has afforded inmates additional time to make phone calls to their attorneys. (*Id.*) Mr. Granados contends that these restrictions have unduly burdened his relationship with his counsel and frustrated his ability to analyze this discovery that the Government has produced.

"Not every restriction on counsel's time or opportunity to investigate or consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). The Sixth Amendment requires that pretrial detainees "have a reasonable opportunity to seek and receive the assistance of attorneys" and is only violated when regulations "unjustifiably obstruct the availability of professional representation." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). Thus, a pretrial detainee's right to counsel is infringed when prison regulations unreasonably burden or significantly interfere with the detainee's access to counsel. *See Benjamin v. Fraser*, 264 F.3d 175, 187 (2d Cir. 2001)

Nothing about the current MDCLA restrictions unjustifiably burdens Mr. Granados's ability to confer with his counsel. The restrictions on legal visits are a rational response to an unprecedented global pandemic. MDCLA remains open for in-person visits at specified times and inmates receive extra time to make legal phone calls. (Dkt. 417 at Ex. B.) And there is no evidence that Mr. Granados's counsel has been unable to communicate with him. While the Court recognizes that there is voluminous discovery in this case, Mr. Granados's need to consult with counsel on this discovery is less urgent given that his trial is over six months away. Any temporary inconvenience imposed on the attorney-client relationship due to the Coronavirus does not mandate Mr.

Granados's release at this time.² *See United States v. Martinez-Espinoza*, 2020 WL 2767520, at *3 (S.D. Cal. May 28, 2020) ("Though the telephonic communications between the Defendant and defense counsel . . . may not be ideal, that reason alone cannot serve as a basis to release the Defendant."); *United States v. Flores-Lopez*, 2020 WL 1862599, at *2 (W.D. Wash. Apr. 14, 2020) (declining to release defendant before trial despite the limitations on attorney visits imposed by COVID); *United States v. Dawara*, 2020 WL 2404898, at *8 (E.D. Pa. May 12, 2020) (holding that "the suspension of legal visits could hardly be viewed as unreasonable [due to the pandemic]," so no Sixth Amendment violation occurred).

Mr. Granados's due process argument is similarly unpersuasive. He contends that in light of the complexity of this case and the COVID-19 pandemic, the duration of his pretrial detention is likely to become unconstitutional. Pretrial detention does not violate substantive due process unless it is punitive as opposed to regulatory. *See United States v. Salerno*, 481 U.S. 739, 746 (1987). At some point, pretrial detention can "become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Id.* at 747 n. 4. Whether the length of pretrial detention constitutes a due process violation "requires assessment on a case-by-case basis." *United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988). Courts generally consider three factors: "(1) the non-speculative length of expected confinement; (2) the extent to which the government (the prosecution and/or the court system) bears responsibility for pretrial delay; and (3) the

---

² Moreover, even if Mr. Granados could establish a Sixth Amendment violation, he has offered no authority that the proper remedy for such a violation is a release from custody. *See United States v. Vizcaino*, 2020 WL 1862631, at *3 (S.D.N.Y. Apr. 14, 2020) (holding that to the extent a defendant "argues that his Sixth Amendment right to counsel has been violated because of the restrictions currently in place at MDC in meeting with counsel," that argument must be made in a challenge brought under 28 U.S.C. § 2241); *United States v. Ratchford*, 2020 WL 2306471, at *7 (D. Md. May 7, 2020) ("Assuming *arguendo* that the current restrictions on contacts and communications with counsel constitute a violation of the defendant's Sixth Amendment rights, he fails to cite any authority that his release is an appropriate remedy.").

strength of the evidence indicating a risk of flight, a threat to the trial process, and/or a danger to the community." *United States v. Ailemen*, 165 F.R.D. 571, 581 (N.D. Cal. 1996).

All three factors favor the Government. With respect to the length of pretrial detention, Mr. Granados has been in custody for less than five months, well within the permissible range. *See United States v. El-Hage*, 213 F.3d 74, 79–81 (2d Cir. 2000) (no due process violation when pretrial detention lasted for over 30 months); *United States v. Millan*, 4 F.3d 1028, 1043–49 (1993) (no due process violation when pretrial detention lasted for between 30 and 31 months); *United States v. Flores*, 2018 WL 3530837, at *2 (C.D. Cal. July 20, 2018) (no due process violation despite the fact that the expected length of pretrial confinement was 52 months). Trial is currently set for January 5, 2021 and to date, neither party has requested a continuance. Mr. Granados invites the Court to speculate that this date is unlikely to stick given possible COVID-19 related delays, but the Court declines to do so. *See Ailemen*, 165 F.R.D. at 581 (courts consider "the *non-speculative* length of expected confinement").

Next, there is no evidence that the Government bears any responsibility for any delay that might occur. Indeed, the Government has already produced most of the discovery to Mr. Granados's counsel. (Opp. at 20.) Finally, as explained above, the Government has marshalled strong evidence as to Mr. Granados's danger to the community and flight risk. Accordingly, the Court finds that Mr. Granados's continued detention does not violate his due process rights.

//
//
//
//

## IV.   CONCLUSION

For the foregoing reasons, Mr. Granados's motion is **DENIED**.

**IT IS THEREFORE ORDERED** that Mr. Granados be detained prior to trial.

**IT IS FURTHER ORDERED** that Mr. Granados be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

**IT IS FURTHER ORDERED** that Mr. Granados be afforded reasonable opportunity for private consultation with counsel.

**IT IS FURTHER ORDERED** that, on order of a Court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility in which Mr. Granados is confined deliver him to a United States marshal for the purpose of an appearance in connection with a court proceeding.

DATED:     June 15, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE